**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

Case No.

HALFLANTS & PICHETTE STUDIO FOR MODERN ARCHITECTURE, INC., JOHN PICHETTE, AND HALFLANTS & PICHETTE CONSTRUCTION, INC.,

Plaintiffs,

v.

NATIONAL BUILDERS INSURANCE COMPANY AND AMERICAN BUILDERS INSURANCE COMPANY,

Defendants.

______________________________

# COMPLAINT

Plaintiffs, HALFLANTS & PICHETTE STUDIO FOR MODERN ARCHITECTURE, INC. ("H&P Studio"), JOHN PICHETTE, and HALFLANTS & PICHETTE CONSTRUCTION, INC. ("H&P Construction") (collectively "Plaintiffs"), sue Defendants, National Builders Insurance Company and American Builders Insurance Company (collectively "Builders" or "Defendants"), and allege:

## JURISDICTION, VENUE, AND PARTIES

1. This is an action for equitable reformation of insurance policies and for declaratory relief arising under Florida law.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the action is between citizens of different states and the amount in controversy exceeds $75,000.00.

3. Plaintiff, Halflants & Pichette Construction, Inc. ("H&P Construction"), is a corporation organized under the laws of the State of Florida and has its principal place of business in Sarasota County, Florida. Accordingly, H&P Construction is a citizen of the State of Florida.

4. Plaintiff, Halflants & Pichette Studio for Modern Architecture, Inc. ("H&P Studio"), is a corporation organized under the laws of the State of Florida and has its principal place of business in Sarasota County, Florida. Accordingly, H&P Studio is a citizen of the State of Florida.

5. Plaintiff, John Pichette, is an executive officer and director of H&P Construction and H&P Studio. John Pichette is an individual residing in the State of Florida.

6. Upon information and belief, Defendant, National Builders Insurance Company, is a corporation organized under the laws of a state other than Florida and has its principal place of business in a state other than Florida. Accordingly, it is a citizen of a state other than Florida.

7. Upon information and belief, Defendant, American Builders Insurance Company, is a corporation organized under the laws of a state other than Florida and

has its principal place of business in a state other than Florida. Accordingly, it is a citizen of a state other than Florida.

8. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District, specifically in Longboat Key, Sarasota County, Florida.

## GENERAL ALLEGATIONS

9. On or about September 5, 2017, H&P Construction through Associates Agency, Inc. submitted an insurance application to Builders Insurance Group, seeking to purchase commercial general liability insurance for residential general contractor construction operations.

10. The application listed a schedule of hazards, identifying by class codes the exposure H&P Construction sought to insure.

11. The application listed Class Code 91583, which refers to contractors – subcontracted work – in connection with building construction, reconstruction, repair or erection – 1 & 2 family dwellings.

12. The application also listed Class Code 91580, which refers to contractors – executive supervisors or executive superintendents and Class Code 91342, which refers to carpentry.

13. In response, National Builders Insurance Company evaluated the risk and agreed to insure H&P Construction's residential general contractor construction operations in exchange for a premium.

14. H&P Construction paid the premium, and National Builders Insurance Company issued Policy Number GLP 0247228 00, which was in effect from September 13, 2017 to September 13, 2018 ("First Policy").

15. The First Policy included an Endorsement titled Calculation of Premium, which states: "The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect."

16. On September 13, 2018, in exchange for the payment of a premium, Builders issued a renewal policy bearing Policy Number GLP 247228 01, for the policy period ending September 13, 2019 ("First Renewal Policy"). A copy of the First Renewal Policy is attached hereto as Exhibit A.

17. Builders calculated the policy premium for the First Renewal Policy based upon the risk being insured - residential general contractor construction operations – in accordance with Builders' rates and rules then in effect.

18. In early 2019, the owners of H&P Construction and H&P Studio decided to cease offering residential general contractor construction services through

H&P Construction and instead provide those same services through H&P Studio. John Pichette, President of H&P Construction and H&P Studio advised Associates Agency, Inc. of this change, so the agent could notify Builders.

19. In April of 2019, after H&P Studio began providing residential general contracting construction services, James Cushman ("Cushman") sought to retain H&P Studio to construct a single-family dwelling in Longboat Key, Florida.

20. In April of 2019, John Pichette sent a copy of the Cushman construction contract to Associates Agency, Inc. and asked the agent to review the insurance requirements.

21. Thereafter, John Pichette and H&P Studio finalized and entered into the contract with Cushman to perform residential general contractor construction services, specifically to build a large single-family dwelling on Longboat Key.

22. In 2019 and every year thereafter through September of 2023, as the policies were coming up for renewal, Builders evaluated the exposure to Builders of insuring the residential general contractor construction operations being performed by John Pichette and H&P Studio and calculated the premium for that risk in accordance with Builders' rates and rules then in effect.

23. Over the course of years from April of 2019 through September of 2023 (the "Relevant Period"), Builders offered to insure the residential general contractor

construction operations being performed by John Pichette and H&P Studio in exchange for a premium.

24. Builders did not require the submission of an application in connection with the renewal policies issued during the Relevant Period.

25. During the Relevant Period, H&P Studio paid the premiums charged by Builders for commercial general liability insurance covering its residential general contractor construction operations.

26. On June 28, 2023, Builders conducted a general liability audit of Policy Number GLP 0247228 04, with the policy term September 13, 2021 through September 13, 2022, to determine whether additional premiums were due to Builders.

27. The general liability audit included a review of the rates and premium basis for the residential general contractor construction operations being performed by H&P Studio. Specifically, the business class codes referenced in the review included contractors – executive supervisors / executive superintendents; insured sub-contractors – 1 & 2 family dwellings; and Contractors NOC. The latter covers general contractors who manage and oversee construction projects including residential projects.

28. In performing the 2021-2022 policy audit, Builders determined that H&P Studio had paid $10,455 to Builders, when the total general liability premium

including fees should have totaled $8,449.00. Accordingly, Builders refunded $2,006.00 of the amount paid by H&P Studio.

**The Insurance Policies**

29. Over the course of years, Builders issued the following commercial general liability insurance policies (the "Policies") bearing policy number series GLP 247228. The Policies are attached as Exhibits A through E.

30. The Policies include:

a. GLP 247228 01 (09/13/2018 – 09/13/2019) – National Builders Insurance Company
b. GLP 247228 02 (09/13/2019 – 09/13/2020) – American Builders Insurance Company
c. GLP 247228 03 (09/13/2020 – 09/13/2021) – American Builders Insurance Company
d. GLP 247228 04 (09/13/2021 – 09/13/2022) – American Builders Insurance Company
e. GLP 247228 05 (09/13/2022 – 09/13/2023) – American Builders Insurance Company

31. The Policies provide commercial general liability coverage, including Coverage A – Bodily Injury and Property Damage Liability.

32. Under the insuring agreement, Builders agreed to pay those sums that the insured becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence" during the policy period and further agreed to defend the insured against any "suit" seeking such damages.

33. Under the Policies, executive officers and directors of an insured corporation are insureds with respect to their duties as officers and directors of the insured corporation.

34. The Policies define "occurrence" as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

35. The Policies define "property damage" to include physical injury to tangible property and resulting loss of use, as well as loss of use of tangible property that is not physically injured.

36. The Policies further provide that Builders has the duty to defend any suit seeking damages to which the insurance applies.

37. The Policies were issued, underwritten, and renewed based upon information provided to Defendants concerning the nature, scope, and risks associated with construction operations performed initially by H&P Construction and subsequently by H&P Studio.

**<u>The Cushman Claim and Builder's Coverage Denial</u>**

38. On October 19, 2023, James and Kirsten Cushman filed a lawsuit against John Pichette and H&P Studio alleging construction defects and resulting property damage arising from a residential construction project located at 777 Old Compass Road, Longboat Key, Florida (the "Underlying Action"). On August 29, 2025, a Second Amended Complaint was filed in the Underlying Action. A copy of

the Second Amended Complaint, which is the operative pleading in the Underlying Action, is attached hereto as Exhibit F.

39. The allegations in the Underlying Action include claims for property damage allegedly caused by defective construction work.

40. H&P Studio and John Pichette tendered the Underlying Action to Builders and requested a defense and indemnity under the Policies.

41. Builders denied coverage, asserting that H&P Studio is not a named insured under the Policies.

42. H&P Studio informed Builders that H&P Studio, the entity performing the general contracting construction services Builders underwrote and agreed to insure during the Relevant Period, should have been listed as the named insured under the Builders Policies, and that H&P Construction was listed as the named insured by mistake.

43. H&P Studio asked Builders to reform the Policies in effect during the Relevant Period, as H&P Studio and Builders plainly intended to insure the general contracting construction services performed by H&P Studio.

44. Builders refused to reform the Policies.

45. On December 29, 2023, Builders performed a general liability audit of Policy Number GLP 0247228 05, with the policy term September 13, 2022 through September 13, 2023, and refunded $8,488.00 of the premiums paid by H&P Studio.

Builders retained $2,101.00 of the premiums paid by H&P Studio for contractors – executive supervisors / executive superintendents and insured sub-contractors – 1 & 2 family dwellings.

46. During the Relevant Period, John Pichette and H&P Studio held the certified general contractor's license utilized to provide general contracting residential construction services.

47. During the Relevant Period, Defendants and/or their agents were provided with information describing the construction operations being performed by H&P Studio, including the nature of the projects, the scope of work, and the business activities of the operating entity.

48. The underwriting information submitted to Defendants reflected the operations of H&P Studio, including its role as the entity performing construction services.

49. Defendants evaluated, underwrote, and accepted the risk associated with those operations.

50. Defendants issued the Policies and accepted premiums from H&P Studio based upon that risk.

51. The identification of H&P Construction as the named insured does not reflect the true intent of the parties at the time the Policies were issued and renewed during the Relevant Period.

52. Plaintiffs informed Defendants of the facts set forth above and again requested that Builders reform the Policies.

53. Defendants have refused to reform the Policies.

54. As a result of Defendants' refusal, Plaintiffs have been forced to incur attorneys' fees and costs and have been deprived of the insurance coverage for which H&P Studio paid premiums.

55. All conditions precedent to bringing this action have been performed, been waived, or have occurred.

56. As a result of Defendants' refusal to reform the Policies and defend H&P Studio and John Pichette, Plaintiffs have been left with no choice but to retain undersigned counsel to file this lawsuit to seek the relief requested herein.

## COUNT I – REFORMATION

57. Plaintiffs reallege and incorporate paragraphs 1 through 56 as if fully set forth herein.

58. This is an action for equitable reformation of the Policies under Florida law.

59. Reformation is appropriate where, due to mutual mistake, scrivener's error, or other mistake in the drafting or issuance of a contract, the written instrument does not accurately reflect the true intent of the parties.

60. At the time the Policies were underwritten, issued, and renewed, the mutual intent of the parties was to insure the general contracting and residential construction operations that were being performed by H&P Studio.

61. The underwriting submissions provided to Defendants described the construction operations being performed by H&P Studio, including its role as the entity acting as general contractor on residential construction projects.

62. Defendants evaluated and underwrote the risk based upon those operations and accepted premiums calculated on that basis.

63. In addition, Defendants and/or their agents were provided with project-specific documentation, including contract materials, demonstrating that H&P Studio was the entity performing construction work.

64. Despite this, the Policies identified Halflants & Pichette Construction, Inc., an entity that was not performing construction work during the Relevant Period, as the named insured.

65. The inclusion of H&P Construction as the named insured instead of H&P Studio was the result of a mutual mistake of the parties, a scrivener's or clerical error, or other mistake in connection with the First Renewal Policy and the policy renewal and issuance process that was perpetuated through subsequent renewals.

66. Alternatively, to the extent the mistake was unilateral, Defendants knew or should have known, based on the underwriting materials and information

provided, that H&P Studio was the intended insured and that the Policies did not accurately reflect that intent.

67. The Policies, as written, fail to reflect the true agreement and intent of the parties at the time of contracting.

68. Plaintiffs have no adequate remedy at law.

69. Equity requires that the Policies be reformed to substitute Halflants & Pichette Studio for Modern Architecture, Inc. as the named insured, nunc pro tunc.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants reforming the Policies to substitute H&P Studio as an insured, nunc pro tunc, and awarding it such other relief as this Honorable Court deems just and proper.

## COUNT II – DECLARATORY RELIEF

### Coverage for H&P Studio

70. Plaintiffs reallege and incorporate paragraphs 1 through 56 as if fully set forth herein.

71. This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201–2202.

72. An actual, present, and justiciable controversy exists between Plaintiffs and Defendants concerning their respective rights and obligations under the Policies.

73. Plaintiffs contend that the Policies should be reformed to identify Halflants & Pichette Studio for Modern Architecture, Inc. as the named insured.

74. Plaintiffs further contend that the allegations in the underlying lawsuit brought by James and Kirsten Cushman seek to hold H&P Studio liable for alleged "property damage" caused by an "occurrence" during the policy periods and Defendants therefore owe a duty to defend H&P Studio in the Underlying Action.

75. Defendants contend that they owe no duty to defend H&P Studio because H&P Studio was not identified as a named insured under the Policies.

76. The parties' competing positions create a concrete dispute of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

77. A judicial declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

**WHEREFORE**, Plaintiffs request that this Court enter judgment declaring that: (a) the Policies are reformed to substitute H&P Studio as the named insured, (b) Defendants owe a duty to defend H&P Studio in the underlying action, and (c) Defendants must reimburse H&P Studio for defense costs incurred by it in the Underlying Action from the date of tender forward. Further, Plaintiffs seek any other relief, including attorney fees and costs, as the Court deems just and proper.

**COUNT III – DECLARATORY RELIEF**

**Coverage for John Pichette**

78. Plaintiffs reallege and incorporate paragraphs 1 through 56 as if fully set forth herein.

79. This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201–2202.

80. An actual, present, and justiciable controversy exists between Plaintiffs and Defendants concerning their respective rights and obligations under the Policies.

81. Plaintiffs contend that during the Relevant Period because John Pichette was an officer and director of H&P Construction and H&P Studio, John Pichette is insured under the Policies whether the Policies are reformed or not.

82. Plaintiffs further contend that because the Underlying Action alleges that John Pichette may have been providing general contracting services through H&P Studio or in a capacity other than through H&P Studio, the Underlying Action gives rise to a potential for coverage for John Pichette in his capacity as an executive officer and director of H&P Construction if the Policies are not reformed and H&P Studio if the Policies are reformed.

83. Plaintiffs further contend that the allegations in the Underlying Action seek to hold John Pichette liable for alleged "property damage" caused by an

"occurrence" during the policy periods and Defendants therefore owe a duty to defend John Pichette in the Underlying Action.

84. Defendants contend that they owe no duty to defend John Pichette because H&P Studio was not identified as a named insured under the Policies.

85. The parties' competing positions create a concrete dispute of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

86. A judicial declaration is necessary and appropriate at this time to determine the rights and obligations of the parties

WHEREFORE, Plaintiffs request that this Court enter judgment declaring that: (a) Defendants owe a duty to defend John Pichette in the underlying action, and (b) Defendants must reimburse John Pichette for defense costs incurred by him in the Underlying Action from the date of tender forward. Further, Plaintiffs seek any other relief, including attorney fees and costs, as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: September 16, 2026.

Respectfully submitted,

FLASTER GREENBERG, PC

*/s/ Meghan C. Moore*
**Meghan C. Moore, Esq.**
Florida Bar No. 668958
meghan.moore@flastergreenberg.com

FLASTER GREENBERG PC
2255 Glades Road, Suite 324A
Boca Raton, FL 33431
Tel: (561) 961-4508
***Attorneys for Plaintiffs***